IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDHIR K. SINGH,

    Petitioner,

vs.

A.P. KANE, Warden, et al.,

    Respondents.

No. CIV S-04-2120 DFL JFM P

<u>ORDER AND</u>

<u>FINDINGS AND RECOMMENDATIONS</u>

/

    Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2001 convictions for possession of methamphetamine for sale (3 counts), possession of methamphetamine while armed with a loaded shotgun, possession of methamphetamine, assault with a deadly weapon and deterring an officer from performing his duty.[1] Petitioner claims that there was insufficient evidence to support several of his convictions, and that the trial court erred by omitting an element of the offense in instructing the jury as to the charge of possession of methamphetamine while armed with a loaded shotgun.

---

[1] These convictions stem from incidents occurring on three different dates: July 7, 2001, July 21, 2001 and August 29, 2001.

1

FACTS[2]

> In the summer of 2001, [petitioner] was arrested three times within eight weeks, resulting in an amended information charging him with seven felonies. On July 7, 2001, [petitioner] was found in a hotel room with over 54 grams of methamphetamine and a loaded shotgun. He was charged with possession of methamphetamine with intent to sell (Health & Safety Code, § 11378 – count one), possession of methamphetamine while armed with a loaded shotgun (*id.*, § 11370.1, subd. (a) – count two), and possession of methamphetamine (*id.*, § 11377, subd. (a) – count three). As to count two, it was further alleged [petitioner] was personally armed with a firearm during the commission of the offense (Pen. Code, § 12022, subd. (c)).
>
> After being released on bail on these charges, two weeks later on July 21, 2001, [petitioner] was found in an office at a car dealership with a large block of methamphetamine, a glass pipe, a scale, and a 40-ounce beer bottle. When police arrived, [petitioner] resisted arrest, fought the officers, and threw the beer bottle at an officer's head. Additional charges were filed against [petitioner], including possession of methamphetamine with intent to sell (Health & Saf. Code, § 11378 – count four) and assault with a deadly weapon (Pen. Code, § 245, subd. (c) – count five). As to each of these counts, it was further alleged that [petitioner] committed these offenses while released from custody pending trial in another matter (Pen. Code § 12022.1).
>
> Approximately one month later, on August 29, 2001, [petitioner] was met at an apartment by deputy sheriffs. When they attempted to arrest him, he fought them, throwing punches and kicking them. He was in possession of over 29 grams of methamphetamine. Once again, additional charges were added to the information. [Petitioner] was charged with possession of methamphetamine with intent to sell (Health & Saf. Code, § 11378 – count six), and felony resisting arrest (Pen. Code, § 69 – count seven). It was further alleged as to each of these charges that [petitioner] committed these offenses while released from custody pending trial in another matter (Pen. Code, § 12022.1).

(People v. Singh, slip op. at 2-3.)

/////

/////

---

[2] The facts are taken from the opinion of the California Court of Appeal for the Fifth Appellate District in People v. Singh, No. C043114 (June 24, 2004), a copy of which is attached as Exhibit D to Respondent's Answer, filed December 23, 2004.

ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court

reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

    A. Insufficient Evidence re July 7, 2001 Charges

Petitioner's first and second claims for relief are that there was insufficient evidence to support the convictions on counts one and two, possession of methamphetamine with intent to sell, and possession of methamphetamine while armed with a loaded shotgun, which stemmed from the July 7, 2001 charges.  Petitioner alleges there was insufficient evidence to demonstrate petitioner had dominion or control over the methamphetamine found in hotel room 251.  Petitioner contends a person by the name of Antonelli had control over the room as Antonelli's personal possessions were the only ones found in the room, and a person by the name of Garcia opened the door to the police.  Petitioner contends the fact that a small amount of methamphetamine was found in petitioner's pocket was insufficient to link petitioner to ownership of the large amount of methamphetamine found between the beds in the hotel room.[3] Petitioner further alleges that there was insufficient evidence to demonstrate petitioner was aware there was a shotgun in the room.

These claims were rejected by the state appellate court in its ruling on petitioner's direct appeal.  People v. Singh, slip op. at 7.  The court reasoned as follows:

> Possession may be actual or constructive. (*People v. Rogers* (1971) 5 Cal.3d 129, 134.)  Constructive possession occurs when the [petitioner] maintains control or the right to control the drugs; it may be imputed when the drugs are found in a place that is immediately accessible to the [petitioner] and subject to his exclusive or joint dominion and control. (*People v. Newman* (1971) 5 Cal. 3d 48, 52-53, overruled on other grounds in *People v.*

---

[3] Petitioner also contends he could not be properly convicted of both possession of methamphetamine with intent to sell and the lesser included offense of possession of methamphetamine.  However, petitioner's conviction for simple possession of methamphetamine on July 7 (count three) was reversed on direct appeal. (People v. Singh, slip op. at 4.)

4

*Daniels* (1975) 14 Cal.3d 857, 862.) The elements of possession may be established by "circumstantial evidence and any reasonable inferences drawn from such evidence; and neither exclusive possession of the premises by nor physical possession of the drug is required." (*People v. Harrington* (1970) 2 Cal.3d 991, 998.)

Here, police had received a tip that Antonelli was selling methamphetamine out of the hotel room. Antonelli was in the parking lot of the hotel and had left [petitioner] and Garcia in his hotel room with 54 grams of methamphetamine, a digital scale, a sawed-off shotgun and ammunition. All of these items were left in plain sight. [Petitioner] was seated on the bed where the shotgun and shotgun shells were located and was facing the two bags of methamphetamine on the floor between the beds.[4]

Contrary to [petitioner's] suggestion that he was simply in the room to purchase methamphetamine, it is highly unlikely Antonelli would have left a significant quantity of methamphetamine, a sawed-off shotgun, and ammunition in his hotel room with someone who was merely a buyer. In fact, it is unlikely he would have left these items with people not knowingly involved in the sales activities. Given the quantity of methamphetamine, its location at [petitioner's] feet, the sawed-off shotgun and ammunition and their location on the same bed with [petitioner], and the digital scale, it was reasonable for the jury to conclude [petitioner] was in constructive possession of both the methamphetamine and the shotgun.

While others may have had access to the methamphetamine and the shotgun in the hotel room, and the methamphetamine and shotgun may in fact have belonged to Antonelli, there was sufficient evidence of [petitioner's] constructive possession of these items.

(People v. Singh, slip op. at 8-9.)

[Petitioner] overstates the case when he characterizes the gun as "hidden." The shotgun was partially concealed by a pillow. However, the butt end of the gun and a clip with blue shotgun shells were immediately visible and readily identifiable to Officer Edward Rosenbrook upon entering the room. [Petitioner] was sitting on the same bed on which the shotgun was located. It is a reasonable inference from this evidence, that [petitioner] knew the

/////

---

[4] The record does not directly indicate [petitioner] was facing the methamphetamine. However, the evidence is that [petitioner] was seated on the bed nearest the door, with his back to the door, facing the opposite bed. The methamphetamine was on the floor between the beds; accordingly, [petitioner] was facing toward the other bed and the methamphetamine.

5

>shotgun was under the pillow.  Accordingly, there was substantial evidence to support the finding that [petitioner] knew the gun was under the pillow.  (Footnote omitted.)

(People v. Singh, slip op. at 10-11.)

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16. The prosecution "need not affirmatively 'rule out every hypothesis except that of guilt'; and . . . a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson, 443 U.S. at 326)).

After reviewing the entire record, this court finds that the state court's conclusion that there was sufficient evidence to establish petitioner's guilt beyond a reasonable doubt is not an unreasonable application of the federal due process standards set forth above.

Although petitioner argues the methamphetamine belonged to either Antonelli or Garcia, and that he was not involved in selling the methamphetamine, there was substantial

evidence from which a jury could infer that petitioner was involved in the sale of methamphetamine and had sufficient dominion and control over the drugs and sawed-off shotgun found in the room. Petitioner was present in the hotel room with a digital scale, a large amount of methamphetamine, a sawed-off shotgun and ammunition. Antonelli, who was apparently the renter of the room, was in the parking lot at the time law enforcement knocked on the door. These are sufficient facts from which a reasonable jury could infer petitioner's involvement in the sale of drugs.

Petitioner does not dispute that the "butt end" of the shotgun was sticking out; rather, he claims the prosecution failed to present evidence petitioner ever saw the gun. (Petition at 5(a).) The prosecution presented evidence that the shotgun was only partially concealed and was immediately and "readily identifiable" as a loaded shotgun by an officer who entered the hotel room. (RT 261-62.) Petitioner was sitting on the same bed as the shotgun. These facts are sufficient to raise an inference that petitioner had knowledge and constructive possession of the shotgun.

On February 6, 2006, petitioner filed a request for judicial notice, asking the court to consider People v. Pitto, 35 Cal.Rptr.3d 635 (Cal.App. 1 Dist. 2005). However, by order filed February 8, 2006, the California Supreme Court ordered *sua sponte* review of this case and directed the parties to brief particular questions. People v. Pitto, 40 Cal.Rptr.3d 607 (Cal. 2006). No final decision has yet been rendered. Id.

However, the facts in Pitto are distinguishable from the instant action in two important ways. First, Pitto was not near the pistol at the time of his arrest. In fact, he was outside the van in which the pistol was located. The pistol was found inside a cardboard box behind the driver's seat, inside a zippered pouch. The pistol was not loaded. Six rounds of ammunition were found in a separate compartment of the pouch.

/////

/////

In the instant action, the shotgun was loaded and found on the same bed on which petitioner was sitting. Arguably the shotgun was immediately available to petitioner for offensive or defensive use, thus supporting the "armed with" prong of the charges.

More importantly, however, Pitto presented key facts during his defense to counter the prosecution's argument that Pitto was personally armed with a firearm during the commission of a felony. Pitto testified that the gun had nothing to do with the methamphetamine; that he was an addict and heavy user of methamphetamine and had the drug in the van for personal use, and that he had brought the gun with him because he had been contemplating suicide. Pitto's mother and brother corroborated Pitto's testimony that he had been depressed and had talked about committing suicide. They also testified that Pitto hated guns.

Here, petitioner presented no other evidence to explain the presence of the firearm. Rather, he alleges he was unaware there was a shotgun in the room on July 7, 2001 because it was hidden under a pillow.

In light of the above, the state court's rejection of petitioner's first and second claims for relief that there was insufficient evidence to support the convictions on counts one and two, possession of methamphetamine with intent to sell, and possession of methamphetamine while armed with a loaded shotgun, was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts. Accordingly, these claims should be denied.

B. <u>Omission of Element of Offense in Jury Instruction</u>

In conjunction with his claim concerning count two, stemming from the July 7, 2001 incident, petitioner claims that the trial court's failure to instruct the jury on the element of knowledge (petitioner's knowledge of the presence of the shotgun) violated petitioner's right to due process. Petitioner contends that the trial court was required to inform the jury that "armed" means "knowingly armed." Petitioner argues he was prejudiced by this omission because the

prosecution failed to demonstrate petitioner knew the shotgun was there. Petitioner further contends that the instruction given regarding Cal. Penal Code § 12022, subd. (c),[5] advising the jury that under the statute "armed with a firearm" means knowingly (CT 181; RT 396), and the omission of an instruction specifically advising that knowledge was an element of the crime that must be proved with regard to Cal. Health and Safety Code § 11370.1,[6] meant the jury was allowed to believe knowledge was not required to convict petitioner of Cal. Health and Safety Code § 11370.1.  (Petition at 5(b)-(c).)

          The last reasoned opinion on this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court agreed with petitioner that the jury should have been instructed on the knowledge element as to the Cal.

/////

---

[5] "Notwithstanding the enhancement set forth in subdivision (a), any person who is personally armed with a firearm in the commission of a violation or attempted violation of Section 11351, 11351.5, 11352, 11366.5, 11366.6, 11378, 11378.5, 11379, 11379.5, or 11379.6 of the Health and Safety Code, shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years." Cal. Penal Code § 12022, subd. (c).

[6]
> (a) Notwithstanding Section 11350 or 11377 or any other provision of law, every person who unlawfully possesses any amount of a substance containing cocaine base, a substance containing cocaine, a substance containing heroin, a substance containing methamphetamine, a crystalline substance containing phencyclidine, a liquid substance containing phencyclidine, plant material containing phencyclidine, or a hand-rolled cigarette treated with phencyclidine while armed with a loaded, operable firearm is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years.
>
> As used in this subdivision, "armed with" means having available for immediate offensive or defensive use.
>
> (b) Any person who is convicted under this section shall be ineligible for diversion or deferred entry of judgment under Chapter 2.5 (commencing with Section 1000) of Title 6 of Part 2 of the Penal Code.

Cal. Health & Safety Code § 11370.1.

1   Health and Safety Code § 11370.1 charge, but found the error harmless.  The state court found as

2   follows:

> We have found no published cases specifically addressing the knowledge requirement under Health and Safety Code section 11370.1, subdivision (a), nor has either party cited any.  As previously noted, section 11370.1, subdivision (a), defines the term "armed with " as having a firearm "available for immediate offensive or defensive use."  The statute does not mention knowledge of the firearm.  However, the language of Health and Safety Code section 11370.1, subdivision (a) ("while *armed* with a loaded, operable firearm" [italics added]), is nearly identical to that of Penal Code section 12022, subdivision (c) ("personally *armed* with a firearm" [italics added]); accordingly, we use Penal Code section 12022 as an analytical guide.
>
> Unlike Health and Safety Code section 11370.1, Penal Code section 12022 does not contain its own definition of "armed with."  However, it is well settled under Penal Code section 12022, that "[a] defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively." (*People v. Bland* (1995) 10 Cal.4th 991, 997.)  The jury instructions for Penal Code section 12022 mirror this language, defining the term "'armed with a firearm' [as] *knowingly* to carry a firearm [or have it available] for offensive or defensive use."  (CALJIC Nos. 17.15 (1998 rev.) (6th ed. 1996), 17.16.1 (6th ed. 1996), italics added.)
>
> Despite the nearly identical language of Health and Safety Code section 11370.1, the jury instruction for section 11370.1 (CALJIC No. 12.52 (6th ed. 1996)) does not give the same definition of "armed with."  CALJIC No. 12.52 defines "armed with" as "having available for immediate offensive or defensive use."  We can discern no reason for this omission of the knowledge requirement other than inadvertence and we urge the CALJIC committee to promulgate a new instruction including the knowledge requirement.
>
> Having determined that the trial court erred in failing to instruct the jury that [petitioner] had to *knowingly* have the firearm available for immediate offensive or defensive use, we turn now to the question of whether such an error was prejudicial.  We conclude it was not.
>
> The misdescription or omission of an element of an offense "ordinarily requires reversal of a conviction unless the error was harmless."  But, if no rational jury could have found the missing element unproven, the error is harmless beyond a reasonable doubt and the conviction stands.  (*Neder v. United States* (1999) 527 U.S. 1, 19 [144 L. Ed.2d 35, 53]; accord, *People v. Flood* (1998) 18 Cal.4th 470, 506.)" (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 416.)

> Here, in connection with the July 7 incident, [petitioner] was charged with violating both Health and Safety Code section 11370.1, subdivision (a), and Penal Code section 12022, subdivision (c). The only firearm involved in the July 7 incident was the sawed-off shotgun under the pillow. With respect to the Penal Code section 12022 charge, the jury was properly instructed that "[t]he term 'armed with a firearm' means knowingly to carry a firearm or have it available for offensive or defensive use." (CALJIC No. 17.16.1.) The jury found [petitioner] guilty on this count. Thus, the jury had to have found that [petitioner] knew of the presence of the gun partially covered by the pillow. In light of this finding, no rational jury could have found that [petitioner] was aware of the gun as to the Penal Code section 12022 charge, but not aware of the same gun in the same location on the Health and Safety Code section 11370.1 charge. Thus, in the specific circumstances of this case, we find the trial court's error – in failing to instruct the jury that knowledge of the gun's presence was an element of the Health and Safety Code section 11370.1 crime – was harmless.

(People v. Singh, slip op. at 11-14.)

Where a trial court fails "to properly instruct the jury regarding an element of the charged crime," the court commits "a constitutional error that deprives the defendant of due process." Conde v. Henry, 198 F.3d 734, 740 (9th Cir. 1999) (quoting Hennessy v. Goldsmith, 929 F.2d 511, 514 (9th Cir. 1991)). However, harmless error analysis is ordinarily applied to trial errors, including a jury instruction that actually omits an element of the offense. See Neder v. United States, 527 U.S. 1, 8, 11 (1999). In determining whether the trial court's error in failing to give an instruction on knowledge as an element of Cal. Health and Safety Code section 11370.1 entitles petitioner to habeas relief, this court must ask "whether the error had a substantial and injurious effect" on the outcome of the trial. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Under this standard of review, a habeas court may not grant habeas relief unless petitioner can establish that, as a result of the state trial court's error, he suffered "actual prejudice;" i.e., that as a result of the error, the outcome of the trial was rendered fundamentally unfair. Id.[7]

---

[7] The conclusion of the California Court of Appeal that the trial court erred as a matter of state law when it gave CALJIC 1.22 at petitioner's trial is not reviewable in this federal habeas

11

1    Petitioner cannot make such a showing of prejudice. Here, the jury was instructed
2 as to the element of knowledge with regard to possession of the weapon under Cal. Penal Code
3 § 12022:

> It is alleged in Counts 1 and 3 that in the commission or attempted commission of the crime charged Counts 1 and 3 that the [petitioner] was personally armed with a firearm. If you find the [petitioner] guilty of either of the crimes charged in Counts 1 or 3 then you must determine whether the [petitioner] was personally armed with a firearm at the time of the commission or attempted commission of the crime.
>
> The term armed with a firearm means knowingly to carry a firearm or have it available for offensive or defensive use. The word firearm includes a pistol, revolver, shotgun, or rifle or any other device designed to be used as a weapon from which is expelled through a barrel a projectile by the force of any explosion or any other form of combustion.

(RT 395-96.)

The jury found petitioner guilty of Cal. Penal Code § 12022. A reasonable jury would not find petitioner had knowledge of the gun as to the Penal Code § 12022 charge, but not have knowledge of the same gun in the same location as to the Health and Safety Code § 11370.1 charge. Because the jury found petitioner had knowledge of the shotgun with regard to the Penal Code § 12022 charge, petitioner cannot demonstrate actual prejudice resulting from the failure to instruct as to the knowledge element on the Health and Safety Code § 11370.1 charge. Here, no rational jury could have found the missing element unproven with regard to the § 11370.1 charge. Thus, "the error is harmless beyond a reasonable doubt and the conviction stands." Neder v. United States, 527 U.S. 1, 19 (1999). This claim for relief should also be denied.

/////

/////

---

corpus proceeding. See Estelle, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or application of state law); Park, 202 F.3d at 1149 (same). The issue before this court is whether the erroneous jury instruction violated petitioner's federal constitutional rights.

C.  Insufficient Evidence re July 21, 2001 Charge of Assault

Petitioner's third claim is that the July 21, 2001 charge of assault with a deadly weapon was also unsupported by sufficient evidence.

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court rejected this claim on the ground that:

> "The mens rea [for assault with a deadly weapon] is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery. Although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm." (*People v. Colantuono* (1994) 7 Cal.4th 206, 214.) "The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm." (*Id.* at p. 218.)
>
> "As used in [Penal Code] section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.] Some few objections, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citations.] Other objects while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.) When used as a club or missile, a beer bottle constitutes a deadly weapon. (*People v. Cordero* (1949) 92 Cal.App.2d 196, 199.)
>
> Here, [petitioner] had been released from custody only a few weeks earlier and was awaiting trial on those charges, when he was found in an office with a large quantity of methamphetamine. When the police entered the office, he refused to comply with their orders and resisted arrest. He struggled with Deputy Jacquith[8], and while she was holding on to him, attempting to handcuff him, he picked up a 40-ounce beer bottle and threw it over his shoulder, towards her head.

---

[8] The state court referred to "Deputy Jacquith," but Deputy Jaquith spelled her last name "Jaquith" for the court reporter during the trial. (Reporter's Transcript ("RT") at 163.)

13

> It was not unreasonable for a jury to infer from this evidence that a 40-ounce beer bottle, thrown over one's shoulder at a deputy's head while struggling with that deputy to resist arrest, is an object "'used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.'" (*People v. Aguilar, supra*, 16 Cal.4th at pp. 1028-1029.) Nor was it unreasonable for the jury to conclude from this evidence that "[petitioner] intended to commit an act likely to result in [the application of] physical force." (*People v. Colantuono, supra*, 7 Cal.4th at p. 218.) Nothing more was required.

(People v. Singh, slip op. at 14-16.)

As noted above, sufficiency of the evidence claims on habeas review are governed by Jackson v. Virginia, 443 U.S. 307, 319 (1979)(relief available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.)

Viewing the evidence offered at trial in the light more favorable to the prosecution, it was not unreasonable for the jury to find petitioner guilty of this charge beyond a reasonable doubt. Sheriff's Detective Scott Hyatt (RT 44) testified that petitioner refused orders to stand up and place his hands behind his back, threw a glass pipe into the corner of the room and started spreading white powder on to the table and ground. (RT 104-05, 174.) Hyatt testified that when Deputy Stacy Jaquith attempted to put petitioner in a wristlock, petitioner "flung" Deputy Jaquith "across a wall." (RT 106.) Deputy Jaquith testified that petitioner grabbed a beer bottle off the table and threw it at her head, coming within an inch of hitting her head. (RT 181.)

While defense counsel argued that the evidence did not support the prosecution's theory that petitioner picked up the bottle and threw it at Deputy Jaquith (RT 487-90), there was sufficient evidence from which a reasonable jury could find petitioner threw the bottle at Deputy Jaquith. The testimony of one witness, if believed, is sufficient to prove a fact. See United States v. Jones, 425 F.2d 1048, 1055 (9th Cir. 1970), quoting Proffit v. United States, 316 F.2d 705 (9th Cir. 1963). Here, the jury apparently believed the testimony of the witnesses that

14

petitioner assaulted the officer with a deadly weapon. It was their prerogative to do so. United States v. Young, 573 F.2d 1137, 1139 (9th Cir. 1978) ("it is the jury's exclusive function to weigh the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts").

The state court's rejection of this claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Petitioner's third claim for relief should also be denied.

### D. Failure to Instruct Using CALJIC 12.42

Finally, petitioner contends that the trial court erred by failing to *sua sponte* instruct with CALJIC No. 12.42. Petitioner argues that CALJIC No. 12.42 would have required the jury to determine petitioner "intended to use the beer bottle as a deadly weapon or dangerous weapon." (Traverse at 23.)

This claim was also rejected by the state appellate court in its ruling on petitioner's direct appeal. People v. Singh, slip op. at 16-18. The court reasoned as follows:

> Here, the jury was instructed with CALJIC No. 9.02 (6th ed. 1996), that '[a] deadly weapon is any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury. Great bodily injury refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or immediate harm.
>
> By contrast, CALJIC No. 12.42 states, " A deadly [or dangerous] weapon is any weapon, instrument or object that is capable of being used to inflict death or great bodily injury[.] [, and it can be inferred from the evidence, including the attendant circumstances, the time, place, destination of the possessor, [the alteration, if any, of the object from its standard form,] and any other relevant facts, that the possessor intended on that [or those] occasion[s] to use it as a weapon should the circumstances require.] [¶] [It is not necessary that a weapon in fact be used or be visible.]
>
> The instruction is not applicable here. CALJIC No. 12.42 "guides a jury's determination of whether an object is a deadly weapon in cases when the object has not actually been used as a weapon." (*People v. Seaton* (2001) 26 Cal.4th 598, 665.) It concerns the determination whether an instrument or object in a defendant's possession is "capable of being used as a weapon "should the

15

> circumstances require." (CALJIC No. 12.42.) Thus, CALJIC No. 12.42 has been deemed relevant where the offense charges the defendant with possession, not actual use, of a prohibited weapon. (E.g., *People v. Graham* (1969) 71 Cal.2d 303, 327-329 [robbery while armed with a dangerous or deadly weapon]. . . .
>
> Such an instruction is "essential when the questioned object is an innocent-appearing utensil capable of use as a dangerous object" (Use Note to CALJIC 12.42 (6th ed. 1996) p. 86) because "if the object is not a weapon per se, but an instrument with ordinary innocent uses, the prosecution must prove that the object was possessed as a weapon." (*People v. Fannin* (2001) 91 Cal.App.4th 1399, 1404.)
>
> In contrast, when the charged offense involves an object that has been used as a weapon, there is no need to instruct the jury whether an otherwise innocent object is a weapon. "[T]he use of such an [innocent seeming] instrument with the intent to resist arrest or detention necessarily encompasses its use or intended use as a weapon." (*People v. Pruett* (1997) 57 Cal.App.4th 77, 86.) Thus, once the object has been used as a weapon, there is no need to define for the jury what constitutes a weapon, although there may be a need to define what is deadly, which was done here pursuant to CALJIC No. 9.02. Accordingly, the trial court did not err in failing to instruct the jury with CALJIC No. 12.42.

People v. Singh, slip op. at 16-18.

A challenge to jury instructions does not generally state a federal constitutional claim. See Middleton, 768 F.2d at 1085 (citing Engle, 456 U.S. at 119); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). In order to warrant federal habeas relief, an error in jury instructions "cannot be merely 'undesirable, erroneous, or even "universally condemned,"'" but must violate some due process right guaranteed by the fourteenth amendment." Prantil, 843 F.2d at 317 (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner must demonstrate that the erroneous charge "'so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Where the challenge is to a refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because

"[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

The decision of the state court rejecting this claim is not contrary to or an unreasonable application of United States Supreme Court authority and should not be set aside. Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair because of the trial court's failure to give CALJIC 12.42. Because it was alleged the beer bottle was used as a weapon, there was no need to *sua sponte* instruct the jury that a beer bottle could be viewed as a weapon, and the jury was instructed as to the definition of what is deadly by the use of CALJIC No. 9.02. After a review of the instructions as a whole, this court concludes that the trial court's failure to give instruction CALJIC 12.42 did not render petitioner's trial fundamentally unfair This claim should also be denied.

E.  Additional Claims Raised in Traverse

In the traverse, petitioner appears to raise, for the first time, a claim that law enforcement's entry into the hotel room violated the Fourth Amendment.[9] A traverse is not the proper pleading to raise additional grounds for relief. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507-08 (9th Cir.1995). In general, claims not raised in the petition are not cognizable on appeal. See United States v. Allen, 157 F.3d 661, 667 (9th Cir.1998) (citing Cacoperdo, 37 F.3d at 507).

However, even assuming, *arguendo*, the court could reach this claim, petitioner's claim is barred by Stone v. Powell, 428 U.S. 465 (1976). In Stone the United States Supreme Court held that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal

---

[9] It does not appear petitioner exhausted his state court remedies with regard to this claim. However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.  Id. at 482.

Accordingly, IT IS HEREBY ORDERED that plaintiff's February 6, 2006 request for judicial notice is granted; and

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 24, 2006.

/s/ John F. Moulds
UNITED STATES MAGISTRATE JUDGE

001; sing2120.157